UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00157-GNS

CHRISTOPHER D. THOMAS                                                                                           PLAINTIFF

v.

DEB HAALAND, UNITED STATES
SECRETARY OF THE INTERIOR                                                                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint or in the Alternative Motion for Summary Judgment (DN 122), Plaintiff's Motion for Impeachment (DN 129), Plaintiff's Motion for Hearing (DN 134), Plaintiff's Motion to Postpone Summary Judgment Awaiting Discovery Requests (DN 143), Plaintiff's Motion for Summary Judgment (DN 144), Plaintiff's Request to Withdraw Motion for Summary Judgment (DN 147), Plaintiff's Motion to Substitute (DN 148), and Plaintiff's Motion to Clarify Discrepancies Regarding Summary Judgment (DN 150). The motions are ripe for adjudication. For the reasons stated below, Defendant's motion is **GRANTED**, and Plaintiff's motions are **DENIED AS MOOT**.

**I.        STATEMENT OF FACTS AND CLAIMS**

As an initial matter, Plaintiff Christopher Thomas ("Thomas"), proceeding *in forma pauperis*, asserts:

> Most of my claims fall under the Civil Rights Act of 1964 and Title 7 including Gender Based Discrimination, Retaliation, Disparate Treatment and Impact, Hostile Work Environment, and Harassment. Other claims involve the fact MACA did not offer a Constitutional Right to Reply in terminating me for false causes, and placed defamatory "Labels" in my employment records. Additional claims include potential violations of the Whistleblower Act and Americans with Disabilities Act.

> There are also apparently two forms of retaliation at play. . . . I'm seeking to discredit three rulings with the EEOC and Kentucky Personnel Board.

(Fourth Am. Compl. 2, DN 118). As this Court has previously noted, a Kentucky Circuit Court is the appropriate forum for review of decisions of the Kentucky Personnel Board ("KPB"). (Mem. Op. & Order 7, DN 40). Thomas brings claims under the Whistleblower Protection Act, the False Claims Act, 18 U.S.C. § 1001, and 42 U.S.C. §§ 1981, 1983, and 1985, and alleges a constitutional right to a meaningful reply opportunity and "labels." (*See* Fourth Am. Compl.). In its August 5, 2021, Order, the Court held that Thomas' Fourth Amended Complaint would only be permitted to the extent it expounds upon his remaining causes of action pursuant to Title VII and the Americans with Disabilities Act ("ADA"). (Mem. Op. & Order 5, DN 117). Therefore, only Thomas' claims under Title VII and the ADA will be addressed.

In 2013, Thomas was hired by the Kentucky Division of Forestry ("KDF") and was the only male on a five-person crew. (Fourth Am. Compl. 5). The crew was treating Hemlock trees with pesticide at Natural Bridge State Park, and Thomas asserts that he expressed concerns over the pesticide use. (Fourth Am. Compl. 5). While working with his crew on a hillside, he claims he fell 20 feet while carrying jugs of chemicals. (Second Am. Compl. 11, DN 34).

A member of Thomas' crew, Brittany Shroll ("Shroll"), complained that when she went into the forest to relieve herself, she saw Thomas looking towards her direction and he seemed to have taken a photo of her using the bathroom. (EEOC Hr'g Tr. 408:2-8, July 11, 2019, DN 21). According to Thomas, he was called to headquarters in Frankfort, told of the accusation, refuted it, and was terminated for "no fault." (Second Am. Compl. 11-12). Steven Kull, Assistant Director of Forestry, stated that Thomas' position at the KDF was already precarious due to poor job performance prior to the allegation by Shroll. (Def.'s Resp. Pl.'s Mot. Prohibit Use DOI Allegations Ex. 2, at 8, DN 83-2). Thomas alleges the accusation "was an attempt to get [him]

terminated in response to [his] whistleblower complaint." (Second Am. Compl. 12). He was employed with the state for less than a month. (EEOC Hr'g Tr. 404:12-15).

Thomas appealed his termination in 2014 to the KPB. (Def.'s Resp. Pl.'s Mot. Prohibit Use DOI Allegations Ex. 2, at 3). He alleged he was terminated due to his complaint of illegal pesticide use and that there was a culture of preferential treatment for women. (Def.'s Resp. Pl.'s Mot. Prohibit Use DOI Allegations Ex. 2, at 11-12). The KPB concluded that Thomas was an at-will employee for the KDF and that he had not produced sufficient evidence to suggest he had been improperly terminated. (Def.'s Resp. Pl.'s Mot. Prohibit Use DOI Allegations Ex. 2, at 10-11). The KPB found that Thomas provided no evidence of discrimination or unlawful preferential treatment based upon gender, concluding that he "failed to produce any probative evidence that the Division of Forestry's decision to terminate him, without cause, was arbitrary or that he was a victim of any disparate discriminatory conduct." (Def.'s Resp. Pl.'s Mot. Prohibit Use DOI Allegations Ex. 2, at 11-12).

On June 25, 2017, Thomas began working at Mammoth Cave National Park ("the Park") in a temporary position as a Visitor Use Assistant. (Lewis Aff. 4). His responsibilities included fee collection, answering the phones, visitor assistance, and the junior range program for kids. (EEOC Hr'g Tr. 324:16-25-325:1-6). On July 13, 2017, Thomas was off-duty and eating in the cafe at the Park when he had an interaction with a woman to whom he introduced himself and told her children about the junior range program. (EEOC Hr'g Tr. 20:3-21:4). Doy Russell ("Russell"), a Park law enforcement officer, testified that the woman complained to the hotel clerk, stating she had an interaction in the cafe with an individual who "seemed a little off." (EEOC Hr'g Tr. 75:14-23). The woman explained the man told her he was single and that she was concerned for her

safety because she thought he was videotaping her or taking a photo. (EEOC Hr'g Tr. 75:14-23, 80:12-15). After the incident, the woman provided a complaint, which stated:

> On 7-13 at 6:30 p.m. at the Mammoth Hotel, was sitting next to a gentleman who seemed off. He was pointing his cell phone at me and my family, including holding his phone down at his feet . . . seemingly videotaping or taking a photo. He tried to talk to us, and then left quickly after he ate. . . . [S]itting in his vehicle (light blue sedan[)] for a few minutes. He drove away. I felt a little unsettled being alone with three kids and I wanted the hotel to know.

(EEOC Hr'g Tr. 217:18-218:3 (internal quotation marks omitted)). Park law enforcement investigated for criminal activity but found none. (EEOC Hr'g Tr. 102:9-25-103:1). The next day, Park Guide Christopher Clark reported to management that another female customer complained about Thomas, saying he was "too friendly" and "snarky." (EEOC Hr'g Tr. 30:12-24). Law enforcement investigated Thomas and found his KPB appeal online through a routine Google search, which revealed the previous accusation against Thomas at the KDF. (EEOC Hr'g Tr. 91:4-25, 93:1-8). Thomas was terminated on July 27, 2017. (First Am. Compl. Exs., at 4, DN 5-1). An Equal Employment Opportunity Commission hearing was held on July 11, 2019. (EEOC Hr'g Tr. 1). Deb Haaland ("Defendant"), the current Secretary of the Interior, is the only remaining Defendant in this action.

## II.  JURISDICTION

Jurisdiction over this action is based on federal question. *See* 28 U.S.C. § 1331.

## III.  STANDARD OF REVIEW[1]

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Because Defendant's motion was styled as a motion to dismiss or, alternatively, a motion for summary judgment, Thomas was on notice that the motion could be treated as a summary judgment motion, and he filed a response. In ruling on the pending motion, the Court will address the motion under Fed. R. Civ. P. 56.

56(a). "[A] party moving for summary judgment may satisfy its burden [by showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "an absence of evidence to support the nonmoving party's case" or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-8 (emphasis in original). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Furthermore, "a nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal citation omitted. In other words, Thomas may not rely only on his own subjective version of the facts as sufficient evidence to proceed past the summary judgment stage. The question is whether any evidence supports Thomas' version of events. *Mays v. Pynnonen*, No. 2:17-CV-167, 2019 WL 4439367, at *2 (W.D. Mich. Sept. 17, 2019).

## IV. DISCUSSION

As an initial matter, Thomas asserts that much of Defendant's evidence amounts to inadmissible hearsay. (Fourth Am. Compl. 34). The Federal Rules of Evidence define hearsay as an out of court statement "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Defendant responds that the out-of-court statements made by female patrons of the Park and various employees are offered "to demonstrate why the Park officials responded as they did." (Def.'s Mot. Summ. J. 18). As courts readily recognize, an "out-of-court statement may be admitted over a hearsay objection if the statement is offered not for the truth of the matter asserted in the statement but merely to show that a party had knowledge of a material fact or issue," i.e., knowledge of complaints about Thomas. 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6719 (2020 ed. Apr. 2020 update) (footnotes omitted). In this instance, the out-of-court statements are offered to explain why the Park conducted an investigation of Thomas. Out-of-court statements offered to explain a party's actions favor admissibility in this case. The EEOC transcript is also admissible. Under F.R.E. 803(8)(c), public records and reports which detail "factual findings resulting from an investigation made pursuant to authority granted by law" are admissible, even if hearsay, so long as "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." *Id.* Thomas offered the EEOC transcript as evidence (DN 21) and has not challenged its authenticity.

He testified at the hearing and also questioned witnesses. Furthermore, any witness' testimony at the EEOC hearing could be admissible evidence at trial, either through the declarants offering live testimony, or if a witness were unavailable, as former testimony under Fed. R. Evid. 804(b)(1). Accordingly, testimony from the EEOC hearing transcript will be considered.

A. **Title VII**

1. ***Disparate Treatment based on Gender and Heterosexual Orientation***

Thomas claims he was subject to disparate treatment by the Park because of his protected status as a heterosexual male. (Fourth Am. Compl. 13-16). Title VII protects "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). To prove his claim under Title VII, Thomas may put forward direct evidence, "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citation omitted). Alternatively, he may rely on circumstantial evidence, which "is proof that does not on its face establish discriminatory animus but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* (citation omitted). For example, if evidence is circumstantial, "an inference is still required to connect the disciplinary measures taken by [the Park] to a bias against [heterosexual] [males]." *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 577 (Ky. 2016).

Without direct evidence of discrimination, which Thomas does not have, he must satisfy the burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "If a plaintiff attempts to prove its case using the *McDonnell Douglas* framework, then the plaintiff is not required to introduce direct evidence of discrimination." *Williams v. Wal-Mart*

7

*Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)). To establish a *prima facie* case for gender and sexual orientation discrimination, Thomas is required to show that at the time of his termination: (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. If Thomas meets the *prima facie* case, the burden shifting of *McDonnell Douglas* requires "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Further, "the defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) (internal quotation marks and citation omitted).

### a. *Prima Facie* Case

Defendant does not dispute the first three elements of the *prima facie* case, but takes issue with the fourth element: whether Thomas' termination from the Park occurred under circumstances giving rise to discrimination. (Def.'s Mot. Summ. J. 23, DN 122). Defendant argues Thomas' employment with the Park was terminated due to allegations made about his behavior which correlated with separate reports from his employment with KDF. (Def.'s Mot. Summ. J. 24). Regarding the fourth prong, the Sixth Circuit has stated:

> [A] showing that similarly situated non-protected employees were treated more favorably than plaintiff is not a requirement but rather an alternative to satisfying the fourth element of the prima facie case—a plaintiff may satisfy the fourth element by showing either that the plaintiff was replaced by a person outside of the protected class or that similarly situated non-protected employees were treated more favorably than the plaintiff.

*Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1247 (6th Cir. 1995)).

Thomas has not shown a similarly situated female or non-heterosexual person was treated more favorably or that he was replaced with a female or non-heterosexual person once he was terminated. Thomas states that similarly situated persons include "female employees, female Park patrons (i.e. off-duty), female coworkers in the KPB Appeal, and DOI employees who previously filed discrimination complaints." (Pl.'s Resp. Mot. Dismiss Mot. Summ. J. 24). Thomas points to no specific examples of a similarly situated female or non-heterosexual employee being treated more favorably by the Park. Moreover, there is no evidence cited to support the inference that Thomas was terminated due to his status as a man. Thomas points to no *factual* basis other than his own beliefs that he was subjected to discrimination. He provides no evidence or citation to the record that he was replaced by someone outside of the protected class, or that anyone outside of the protected class who was similarly situated was treated more favorably.

The transcript of the EEOC hearing, during which Thomas was provided the opportunity to question and cross-examine Park personnel, provides no basis for inferring discriminatory intent or motive. Thomas repeatedly states that the allegations are false, which he attributes to discriminatory intent. (*See generally* Pl.'s Resp Def.'s Mot. Dismiss). He has pointed to no facts, other than his own version of events, which indicate the allegations are false. The fact that the KPB found insufficient evidence to conclude Thomas was guilty of criminal wrongdoing does not establish that the allegations were manufactured for a discriminatory purpose. As noted above, the salient fact is that there were various similar claims made regarding Thomas' conduct, each completely independent from the others, and no evidence that the Park somehow concocted the complaints.

Thomas also claims he was denied gym access because of his status as a heterosexual male. (Fourth Am. Compl. 19). Lack of gym access, however, is not an adverse action. *See Galeski v.*

9

*City of Dearborn*, 435 F. App'x 461, 468 (6th Cir. 2011). Regardless, Thomas' claim still fails. David Wyrick, Chief of Interpretation and Visitor Services for the Park, recalled signing the authorization for the keys to be released to Thomas for gym access. (EEOC Hr'g Tr. 298:21-22, 300:5-10). Thomas' own prior testimony contradicts his claim that he was denied gym access because of his disability. During EEOC hearing testimony, Thomas testified: "I wouldn't say that [Coleman England], like, intentionally, like, prevented me from using the gym or something. I don't—it's—it wasn't—he was new, and he didn't even have access to the key." (EEOC Hr'g Tr. 337:22-25). This coincides with the testimony of Coleman England ("England"), who testified that "[the request for gym access] might've been in the first or second week he started. And then we sent in the request and then—I was brand new in the position. So I think it—these things taken a little bit—some—and then, time we get back, you know, I think it just takes a while." (EEOC Hr'g Tr. 283:12-16).

Thomas also claims he was denied volunteer opportunities due to discriminatory animus. (Fourth Am. Compl. 19). An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Unless the volunteer opportunities denied Thomas were stepping-stones to career advancement, denial of the opportunity is not an adverse employment action. *Martin v. D.C.*, 78 F. Supp. 3d 279, 311 (D.D.C. 2015).[2] Thus, Thomas has failed to establish a *prima facie* case of disparate treatment based on his gender or sexual orientation.

---

[2] The lack of volunteer opportunities is inconsequential. England stated that he recalled Thomas asking to volunteer outside of the visitor's center and with the Department of Fish and Wildlife. (EEOC Hr'g Tr. 287:20-288:4). In response to this request, England testified: "I said 'that's fine.

### b. Employer's Legitimate, Nondiscriminatory Reason

Even if Thomas could satisfy the *prima facie* case, his claim would still fail. Representatives of the Park state that Thomas was fired due to the similarity between the behavior discussed in the KPB appeal and the reports received regarding Thomas at the Park was the motivating factor in his termination. England, Thomas' direct supervisor, testified that "I'll go with the incident at the park and the complaint and then the previous incident with the State. I think this together is how we came to the decision . . . [to terminate Thomas' employment]." (EEOC Hr'g Tr. 256:4-7). England explained that "with all the incidents that happened, one at the Park, the complaints, and the previous one with the State, we just thought it was in the best interests. That's how we came to our decision on that." (EEOC Hr'g Tr. 259:12-15). The similarities of the allegations in the KPB hearing to those complained of at the Park was what the basis of the Park's decision to terminate Thomas. (EEOC Hr'g Tr. 275:17-22). This nondiscriminatory explanation satisfies the Park's burden under *McDonnell Douglas*.

### c. Pretext

Defendant having provided a nondiscriminatory basis for the Park's adverse employment action, "the burden shifts back to the plaintiff to show that the reason put forth by the defendant is pretextual, which can be done by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003) (citation and

---

Once we get you on board and we have enough staff available to send them out.' And I said I would accommodate him in that when we get a chance." (EEOC Hr'g Tr. 288:4-7). Thomas then asked England if there was a reason he was not assigned often to the front desk or to collect money, to which English stated, "think, because everybody goes through—collect—you know, a process to learn the different stations." (EEOC Hr'g Tr. 289:2-11). Thomas began work on June 25, 2017. (Lewis Aff. 4). Thomas was terminated after working and training at the Park for a little over a month. (First Am. Compl. Exs., at 4).

11

quotation omitted). To rebut the employer's proffered reasoning, "the plaintiff must allege more than a dispute over the facts on which [his] discharge was based. [He] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001. The Sixth Circuit has held,

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

England was involved in making the decision to terminate Thomas. (EEOC Hr'g Tr. 259:3-7). As he testified during the EEOC hearing:

> Q: . . . [D]id you actually believe I had done that [taping people with a cellphone camera]?
> A: Yes, I think that something was going on, you know, usually people don't make these types of complaints to law enforcement.

(EEOC Hr'g Tr. 262:5-9). "An employee cannot allege discrimination like a protective amulet when faced with the possibility that his preexisting disciplinary problems could lead to his termination." *Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014). Thomas provides no evidence to rebut the Park's assertion that he was not employed long enough participate in various training and volunteer opportunities or for his gym access to be fully authorized. Thomas can point to no facts or evidence which rebut the Park's honest belief that the complaints from its customers were made in good faith.

Defendant having met her burden of providing a nondiscriminatory basis for the Park's actions, Thomas' Title VII disparate treatment claim fails as he has not provided evidence to

12

support his allegations of discriminatory actions taken by the Park as a result of his status as a heterosexual male.

### 2. *Hostile Work Environment*[3]

In order to sustain a claim under Title VII for a hostile work environment, Thomas must present a *prima facie* case establishing: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his gender [or sexual orientation]; (4) the harassment was so severe and pervasive that it unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable because it knew or should have known of the harassment and failed to take appropriate action. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (citation omitted).

To allege a hostile work environment, the conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). A plaintiff must show the working environment was objectively and subjectively hostile or abusive. *Id.* at 21-22. "The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (citation omitted). Thomas must meet both an objective and subjective test: "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Downs v. Postmaster Gen.*, 31 F. App'x 848, 850 (6th Cir. 2002) (citing *Harris*, 510 U.S. at 2121. Thomas must present a factual showing that he was subjected to a hostile work environment. *See Duncan*

---

[3] Thomas also alleges a claim for harassment. However, the harassment Thomas alleges is synonymous with his more specific hostile work environment claim under Title VII.

*v. Jefferson Cty. Bd. of Educ.*, No. 3:19-CV-00495-GNS-RSE, 2021 WL 1109355, at *4 (W.D. Ky. Mar. 23, 2021) ("Absent facts directly implicating any Individual Defendant in discriminatory conduct, Plaintiffs have failed to allege Individual Defendants engaged in any active unconstitutional behavior.").

Thomas alleges hostility primarily stemming from "manufactured" and "lurid allegations" targeting him based on his status as a heterosexual male. (Fourth Am. Compl. 19). Thomas states that he was falsely accused of sexual harassment. (Fourth Am. Compl. 19). This Court has ruled on a similar issue in *Watts v. Lyon County Ambulance Services*, 23 F. Supp. 3d 792 (W.D. Ky. 2014), *aff'd*, 597 F. App'x 858 (6th Cir. 2015), where the plaintiff claimed:

> [He] was subject to unwelcome harassment because of his gender in that the Ambulance Service . . . created a hostile work environment . . . by terminating him on the basis of false accusations of sexual harassment, which were solicited and/or known by members of the Lyon County Ambulance Service Board of Directors . . . [b]ut for the fact that he was a male, the defendants would not have contacted a former female employee to fabricate these charges.

*Id*. at 805-06 (second alteration in original) (internal quotation marks omitted) (internal citation omitted) (citation omitted). This Court found that the plaintiff "offered nothing more than conclusory assertions to show that he was subjected to harassment *based on his sex*." *Id.* at 806. Similarly, Thomas cannot meet the second and third prongs of the *prima facie* case in the instant action. There is no evidence that Thomas was subjected to hostilities because of his gender or sexuality. *See Stewart v. Esper*, 815 F. App'x 8, 13 (6th Cir. 2020) ("Spreading rumors . . . [is] not materially adverse." (citation omitted)); *Boykin v. Mich. Dep't of Corr.*, 211 F.3d 1268, 2000 WL 491512, at *4 (6th Cir. 2000) ("[A]ssuming the truth of these allegations, they were facially neutral and therefore not objectively indicative of harassment on the basis of plaintiff's [gender].").

Furthermore, the conduct complained of is not objectively severe. When referring to being called "creep" or "coworker avoidance" (Fourth Am. Compl. 19-20), this incident amounts to

14

"mere offensive utterance[s]" which do not rise to the standard of a Title VII hostile work environment claim. *Harris*, 510 U.S. at 23. The burden to prove the *prima facie* case is on Thomas as the plaintiff. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). Thomas "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Without any evidence to support the allegations that the customer complaints were fabricated or made because of Thomas' gender and sexual orientation, his hostile work environment claims fail.

      B.      <u>**Americans with Disabilities Act**</u>

           1.      *Disability-Based Discrimination*

Thomas fails to provide facts showing that any disability was the basis of his termination. Like his Title VII discrimination claim, the *McDonnell Douglas* burden shifting standard applies and "the plaintiff's burden at the summary judgment stage 'is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination.'" *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008) (citation omitted).

Just as Thomas provided no facts supporting his claim of gender or sexual orientation discrimination, he has not cited evidence that he was terminated based on his disability. Regardless, Defendant has established that the similarities between the complaints the Park received and the allegations from Thomas' employment with KDF as the driving force behind his termination. (EEOC Hr'g Tr. 255:6-10, 259:12-15, 262:7-13, 267:12-18; First Am. Compl. Ex. 1, at 4). Thomas testified in the EEOC hearing: "Well, if my disability makes me socially awkward. it could make people complain about me. It could contribute to bogus complaints of people—you know, if I come off the wrong way." (EEOC Hr'g Tr. 355:19-22). Russell testified that the

15

complainant said she felt unsafe after her interaction with Thomas when he told her he was single. (EEOC Hr'g Tr. 75:21-2). Anti-discrimination statutes do not excuse an employee from disciplinary action for "violating the employer's rules or disrupting the workplace." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). Thomas cannot claim disability-based discrimination when Defendant's evidence shows he was terminated from the Park for allegations of inappropriate behavior.[4]

## 2. *Hostile Work Environment*

Thomas also has not proven that any alleged hostility occurred because of his disability. He asserts the hostility was due to the fact he suffers from "two spinal cord injuries . . . to lumbar and cervical spine, PTSD, and anxiety disorder." (Fourth Am. Compl. 22). Without direct evidence, the same burden shifting applies to the ADA as to Title VII, "when a plaintiff relies on indirect evidence to show discrimination in violation of the ADA . . . , the *McDonnell Douglas* burden-shifting framework applies." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 (6th Cir. 2020) (citation omitted). Thomas must prove: (1) "[he] was disabled; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability; (4) the harassment unreasonably interfered with [his] work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 460-61 (6th Cir. 2002) (citations omitted).

Thomas has not met the second prong of his *prima facie* case. As evidence of alleged harassment in the workplace, Thomas points to a statement he attributes to his supervisor, Leslie Lewis, which was made in the mediation of this issue: "Oh, he's got a mental disorder." (EEOC

---

[4] Thomas again asserts that denial of gym access amounted to disparate treatment. This claim similarly fails here because Thomas has not established that the delay in his receipt of a gym key was motivated by discriminatory animus.

16

Hr'g Tr. 354:12-13). This statement, however, was in the context of litigation that occurred long after Thomas' employment ended. Thomas also claims that coworkers at the Park stated he "seemed off." (Fourth Am. Compl. 22). Either statement would not arise to the level of creating a hostile work environment: "[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment." *Harris*, 510 U.S. at 21 (internal quotation marks omitted) (internal citation omitted). Further, "[a] single incident of explicit reference to [a plaintiff's] disability is not sufficiently severe to constitute harassment under our precedents." *Trepka*, 28 F. App'x at 461.

Thomas alleges further hostility and claims"

> It appears to me that MACA had forged the [gym] authorization, but all I can say is it made zero sense. In any case I was denied access by withholding a key. I think this was indirectly linked to my disability. Basically, some of the females said I was odd so MACA denied multiple opportunities. This was partially due to my disability as far as I can see.

(Fourth Am. Compl. 23). Thomas has not shown that he was subject to a hostile work environment because of his disability.[5]

### 3. Retaliation

Finally, Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Thomas "may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the *McDonnell Douglas* framework."

---

[5] As discussed above, Thomas' gym access, if even considered an adverse action, was delayed due to his supervisor's need to adjust to his new role, rather than any discriminatory purpose. (EEOC Hr'g Tr. 283:12-16). Accordingly, Defendant is entitled to summary judgment on the hostile work environment claim.

*Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)).  Thomas does not identify evidence of direct discrimination and therefore must demonstrate by a preponderance of the evidence:  (1) he engaged in a Title VII protected activity; (2) the employer knew of the protected activity; (3) the employer took an adverse action against Thomas; (4) a causal connection between the adverse employment action and the protected activity.  *Id.* at 336 (citing *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995-96 (6th Cir. 2009).  The desire to retaliate must have been the but for cause of the challenged action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 354 (2013).

Thomas asserts that he engaged in protected activity by "opposing Gender Based Discrimination" when he filed the appeal with the KPB.  (Fourth Am. Compl. 8-9).[6]  Opposing gender discrimination is a protected activity under Title VII.  42 U.S.C. § 2000e-3.  The decision of the KPB reveals that Thomas asserted gender discrimination in response to his termination from the KDF.  (Def.'s Resp. Pl.'s Mot. Prohibit Use DOI Allegations Ex. 2, at 11).  Though it is undisputed that Thomas' employer was aware of the KPB appeal and decision, Thomas fails to identify causation linking his termination from the Park to his gender discrimination claim before the KPB.  Any evidence of causation must be "sufficient to raise the inference that [the plaintiff's] protected activity was the likely reason for the adverse action." *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (citation omitted).

"In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider . . . whether there is a temporal

---

[6]Thomas also claims retaliation against him for, "opposing dangerous and illegal use of pesticides in appeal 2013-291" under 42 U.S.C. § 1987.  (Fourth Am. Compl. 8).  In accordance with the Court's prior Memorandum and Opinion Order, the only claims remaining are brought under Title VII and the Americans with Disabilities Act.  (Mem. Op. & Order 4, DN 117).  As this claim further does not fall under the protections of Title VII, it is summarily dismissed.

connection between the protected activity and the retaliatory action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516-17 (6th Cir. 2009) (citing *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999)). Although Thomas was fired after the Park learned of the appeal of his termination from the KDF, there is no proof that any of the decisionmakers was aware of his gender-based discrimination claim. Indeed, the only significance attributed to the KPB matter was that Thomas had been accused of inappropriate interactions with a female coworker.

To prove causation, courts also may consider "whether the employer treated the plaintiff differently from similarly situated individuals . . . ." *Barrett*, 556 F.3d at 516-17 (citing *Allen*, 165 F.3d at 413). Thomas has not pointed to any other employee who was treated differently and there are no facts indicating Thomas' appeal to the KPB motivated the Park's decision-making. "Mere personal beliefs, conjecture, and speculation" are insufficient to establish retaliatory motives in a Title VII claim. *Siegner v. Twp. of Salem*, 654 F. App'x 223, 230 (6th Cir. 2016) (quoting *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006)). Thomas confuses the Park's consideration of the concerns voiced by Thomas' female coworkers at KDF with retaliation for Thomas filing an appeal. (Pl.'s Mot. Summ. J. 36). Again, Thomas' claim is defeated because Defendant has established Thomas was fired from the Park because of the complaints made by Park visitors that were similar to the allegations involved in his termination from KDF. (EEOC Hr'g Tr. 255:6-10, 259:12-15, 262:7-13, 267:12-18; First Am. Compl. Ex. 1, at 4).

There is no evidence that the Park terminated Thomas *because* he chose to file an appeal. Thomas cannot claim that he was terminated because of discriminatory animus when there is a clear behavior-motivated explanation for the adverse action and no evidence of employer misconduct. *Beard*, 593 F. App'x at 451 (holding that "[e]ven without alleging discrimination, [the plaintiff] still would have engaged in the same conduct that directly preceded his

19

termination"). For these reasons, the Court will grant summary judgment for Defendant on the retaliation claim.[7]

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (DN 122) is **GRANTED**, and the Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

2. Plaintiff's Motion for Impeachment (DN 129), Plaintiff's Motion for Hearing (DN 134), and Plaintiff's Motion to Postpone Summary Judgment Awaiting Discovery Requests (DN 143), Plaintiff's Motion for Summary Judgment (DN 144), Plaintiff's Request to Withdraw Motion for Summary Judgment (DN 147), Plaintiff's Motion to Substitute (DN 148), and Plaintiff's Motion to Clarify Discrepancies Regarding Summary Judgment (DN 150) are **DENIED AS MOOT**.

3. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 14, 2022

cc: counsel of record
    Plaintiff, *pro se*

---

[7] Because Defendant's motion is being granted, it is unnecessary to address Plaintiff's motions, which will be denied as moot.